IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA f/u/b/o
AAROW ELECTRICAL
SOLUTIONS, LLC,

    *Plaintiff*,

    v.

CONTINENTAL CASUALTY
COMPANY et al.,

    *Defendants*.

Civil Action No. ELH-16-3047

## MEMORANDUM OPINION

This case arises under the Miller Act, 40 U.S.C. § 3131 *et seq.* The plaintiff is the United States of America f/u/b/o Aarow Electrical Solutions, LLC ("Aarow"). Pursuant to a subcontract agreement entered in December 2013, Aarow provided labor and materials to Grunley Construction Company, Inc. ("Grunley"), the general contractor for a construction project (the "Project") at the Social Security Administration complex in Woodlawn, Maryland. *See* ECF 1, ¶ 8; ECF 1-2.

Aarow maintains that it has not been paid in full for the labor and materials it contributed to the Project. *See* ECF 1. Therefore, pursuant to the Miller Act, plaintiff filed suit against Grunley's sureties, Continental Casualty Company ("Continental") and Liberty Mutual Insurance Company ("Liberty") (collectively, the "Sureties"), to recover on the payment bond that the Sureties had issued for the Project. *Id.* It seeks $246,093.00, plus interest and costs. *Id.* at 6.

Grunley intervened as a defendant. *See* ECF 14 ("Motion to Intervene"); ECF 37 (Order of August 24, 2017, granting Motion to Intervene). In addition, Grunley filed a counterclaim against Aarow for breach of contract (Count I) and damages related to Aarow's alleged overcharging on the Project (Count II). ECF 46 (Amended Counterclaim).

Three motions are pending. First, Aarow has moved to dismiss Count I of Grunley's Amended Counterclaim, for breach of contract. ECF 51. Aarow's motion is supported by a memorandum of law. ECF 55 (collectively, "Motion to Dismiss"). Grunley opposes the Motion to Dismiss. ECF 56. Aarow replied. ECF 59.

Thereafter, Aarow moved for summary judgment in its favor on its Miller Act claim and as to Count II of Grunley's Amended Counterclaim. ECF 60. The motion for summary judgment is supported by a memorandum of law (ECF 60-1) (collectively, "Aarow Motion") and several exhibits. Defendants oppose the Aarow Motion (ECF 64) and have submitted several exhibits. Aarow replied. ECF 68.

On the same day that the Aarow Motion was filed, defendants filed a motion for partial summary judgment. ECF 61. Defendants' motion is supported by a memorandum of law (ECF 61-1) (collectively, "Defendants' Motion") and numerous exhibits. Aarow opposes Defendants' Motion (ECF 65) and defendants replied. ECF 67.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion to Dismiss. And, I shall grant the Aarow Motion and Defendants' Motion in part and deny them in part.

## I.    Factual and Procedural Background[1]

### A.

In October 2013, Grunley entered into a Prime Contract with the General Services Administration ("GSA," the "United States," or the "Government") in connection with a construction project at the Social Security Administration headquarters in Woodlawn, Maryland. ECF 61-2 (Declaration of B.H. Scott, II), ¶ 3. As a condition of the Prime Contract, Grunley

---

[1] The factual background is drawn largely from the Declarations and exhibits attached to the motions.

delivered to the Government, as Owner, a labor and material payment bond (the "Bond"), with Liberty and Continental as the joint and several Sureties. *Id.* ¶ 4; ECF 1-1 (Bond). On or about December 26, 2013, Grunley entered into a subcontract agreement with Aarow by which Aarow was to perform electrical work for the Project. *Id.* ¶ 5; *see also* ECF 1-2 (the "Subcontract"). Some of Aarow's work could only occur during scheduled power outages at the site of the Project. ECF 61-2, ¶ 6. Two of these planned outages ("Outage 1" and "Outage 3") were rescheduled by GSA, which delayed Aarow's work on the Project. *Id.*[2]

As a result of these delays, in December 2014, Aarow and Grunley submitted several change order requests to GSA, seeking additional time and compensation for the delays. *Id.* ¶¶ 7-8. In total, the change order requests sought $349,606 in additional compensation from GSA, with $252,101 of that amount for Aarow. *Id.* ¶ 8. GSA granted the requests only in part, and issued a unilateral contract modification to Grunley, increasing the contract price by $143,882. *Id.* ¶¶ 9-10. Of this amount, Grunley passed through $103,235 to Aarow. *Id.* ¶ 11.

In April 2015, GSA declared that the Project had reached "substantial completion" on March 9, 2015. *See* ECF 61-8 at 4 (Aarow's claim for compensation after substantial completion). Aarow's work on the Project was fully completed by May 16, 2016. *Id.* According to Aarow, it incurred further delay-related damages after the date of substantial completion. *Id.* at 9-11. However, Aarow also signed partial releases dated April 30, 2015, and December 31, 2015, in exchange for payments from Grunley. *See* ECF 61-2, ¶ 14; *see also* ECF 61-7 at 1 (April 2015 Release); *id.* at 2 (December 2015 Release). Under the terms of the partial releases, Aarow waived and released any unauthorized claims against Grunley or the Sureties as of the dates of the releases. *See* ECF 61-7 at 1, 2.

---

[2] Aarow intermittently maintains that some of the delays were also attributable to Grunley. *See* 65 at 5-7; ECF 65-1 at 2.

On June 15, 2016, Aarow submitted a claim to Grunley, seeking additional compensation for the delays, in the amount of $246,093.  ECF 61-2, ¶ 15; *see also* ECF 61-8 ("Aarow Claim").  Grunley submitted a claim to GSA, seeking the amount requested by Aarow, plus roughly $100,000 in other payments.  ECF 61-2, ¶ 16; ECF 61-9 ("Grunley Claim").  This suit by Aarow followed on September 1, 2016.  ECF 1.

Thereafter, on March 30, 2017, GSA denied the Grunley Claim, and instead sought $43,194.15 in repayment from Grunley.  ECF 61-2, ¶ 17; *see* ECF 61-10 ("Government Claim").  The Government Claim consisted of a demand for $26,778.78 in liquidated damages and $16,415.37 for "labor overcharging."  ECF 61-2, ¶ 17.  Grunley appealed the denial to the U.S. Civilian Board of Contract Appeals ("CBCA") on June 26, 2017.  *Id.* ¶ 18.  On November 27, 2017, Grunley and GSA settled both the Grunley Claim and the Government Claim with a payment of $105,000 from GSA to Grunley.  *Id.* ¶ 23.  According to Grunley, Aarow's share of this recovery is $25,957, minus Aarow's pro rata share of the costs of the claim.  *Id.*[3]

**B.**

As noted, Aarow filed this suit against the Sureties on September 1, 2016.  ECF 1.  In January 2017, Grunley moved to intervene (ECF 14, "Motion to Intervene") and concurrently moved to stay the case pending the resolution of its appeal before the CBCA.  ECF 16 ("Motion to Stay").  One of the central arguments of Grunley's Motion to Stay was that the Subcontract contained two clauses that Grunley asserted would limit Aarow's recovery.

In particular, the Subcontract provided, in regard to payments due to Aarow, ECF 1-2, ¶ 6: "Payment from the Owner [i.e., the Government] is a specific condition precedent to the

---

[3] Grunley does not enumerate these costs.

Contractor's obligation to pay the Subcontractor . . . ." This clause is known as a "pay-if-paid" or "pay-when-paid" clause. Furthermore, the Subcontract also specified, *id.* ¶ 12:

> The Contractor shall not be independently liable to Subcontractor for any unforeseeable delay or interference occurring beyond the Contractor's control or for delay or interference caused by Owner or other subcontractors or suppliers. Subcontractor shall only be entitled to reimbursement for any damages for delays recovered on its behalf by the Contractor from the Owner or others.

This clause is known as a "no-damages-for-delay" clause.

Grunley argued in its Motion to Stay that the case must be stayed while Grunley's appeal with the Government was pending because, under these clauses of the Subcontract, "Aarow has no damages unless and until Grunley recovers the sum from the Government." ECF 16 at 11.

In a Memorandum Opinion (ECF 36) and Order (ECF 37) of August 24, 2017, this Court granted the Motion to Intervene but denied the Motion to Stay. The Court ruled that, if a stay were granted and the Subcontract clauses in question were enforced, Aarow could be effectively denied its rights under the Miller Act. *See* ECF 36 at 24-26. As a result, the Court concluded that "Grunley may not rely on the conditional payment clauses of the Subcontract to delay the Miller Act suit against its sureties." *Id.* at 27.[4]

## II.     Legal Standards

### A.  Choice of Law

Defendants maintain that the Subcontract is governed by Virginia law. ECF 61-1 at 15; *see also* ECF 1-2, ¶ 39 (providing that "[t]his Agreement shall be governed by the laws of the Commonwealth of Virginia"). Aarow appears to agree. *See* ECF 65 at 10. Where the question is one of contract interpretation and not the construction of the Miller Act itself, courts look to state law. *See United States for Use & Benefit of Shields, Inc. v. Citizens & S. Nat. Bank of*

---

[4] The Memorandum Opinion (ECF 36) contains a far more comprehensive discussion, which I need not repeat here.

*Atlanta, Ga.*, 367 F.2d 473, 477 (4th Cir. 1966); *see also United States v. Hartford Accident & Indem. Co.*, 168 F. Supp. 3d 824, 832 (D. Md. 2016).

"In Maryland, choice of law provisions in contracts are enforceable unless the choice of law jurisdiction has no substantial relationship to the transaction, or there is a fundamental policy difference in the laws of another jurisdiction with a more substantial interest in the parties or the transaction." *United States for use & benefit of Tusco, Inc. v. Clark Constr. Grp., LLC*, 235 F. Supp. 3d 745, 753 (D. Md. 2016). Observing no such considerations here, I shall apply Virginia law to the State-law claims.

However, "[f]ederal law, not state statute or common law principles, controls in Miller Act suits." *Tusco*, 235 F. Supp. 3d at 756 n.13; *see also F. D. Rich Co. v. U.S. for Use of Indus. Lumber Co.*, 417 U.S. 116, 127 (1974) ("The Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law."). As a result, for all questions relating to the interpretation and application of the Miller Act, I shall apply federal law.

### B. Rule 12(b)(6)

As noted, Aarow has moved to dismiss Count II of Grunley's Amended Counterclaim. ECF 51. A defendant may test the legal sufficiency of a complaint, or a counterclaim, by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative

defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger,* 510 F.3d 442, 450 (4th Cir. 2007). However, without converting a motion to dismiss to a motion for summary judgment, a court may properly consider documents expressly incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint by reference and authentic.'" *U.S. ex rel. Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cty. Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v. Generations Federal Credit Union*, 891 F.3d 508, 512-13 (4th Cir. 2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004).

To be "integral" a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which

his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. "Accordingly, if a breach-of-contract plaintiff alleges a failure to perform an act required by the contract, the contract's description of the defendant's duties will prevail over the plaintiff's contrary characterization." *Id.* at 166. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.* at 167.

Along with the Complaint, Aarow submitted several exhibits, including the Sureties' Bond (ECF 1-1); the Subcontract (ECF 1-2); and the Grunley Claim (ECF 1-3). A court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

These documents are incorporated into the Complaint. Therefore, I shall consider them in deciding the Motion to Dismiss.[5]

## C. Rule 56

Both parties have moved for summary judgment under Fed. R. Civ. P. 56. Under Rule 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See*

---

[5] Additionally, Aarow has attached copies of three federal district court cases to the Motion to Dismiss. ECF 51-1; ECF 51-2; ECF 51-3. Of course, these documents are not evidence.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law.").  The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.* at 248.  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in *Bouchat*) (quoting former Fed. R. Civ. P. 56(e)); *see also Celotex*, 477 U.S. at 322-24.  Moreover, in resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. Ltd.*, 475

U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). However, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

The judge's "function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Moreover, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

When, as here, the parties have filed cross-motions for summary judgment, the court must consider "each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted); *see Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). Simply because both parties have filed for summary judgment does not mean that summary judgment to one party or another is necessarily appropriate. "Both motions must be denied if the court finds

that there is a genuine issue of material fact.  But if there is no genuine issue and one or the other

party is entitled to prevail as a matter of law, the court will render judgment."  10A Wright,

Miller & Kane, *Federal Practice & Procedure* § 2720, at 336-37 (3d ed. 1998, 2012 Supp.).

### III.    Discussion

### A.  The Miller Act

The Miller Act, 40 U.S.C. § 3131 *et seq.*, imposes certain obligations on the prime

contractor on any "contract of more than $100,000 . . . for the construction, alteration, or repair

of any public building or public work of the Federal Government."  40 U.S.C. § 3131(b).  Of

import here, the Miller Act requires the contractor to furnish a payment bond, through a

satisfactory surety, "for the protection of all persons supplying labor and material in carrying out

the work provided for in the contract." *Id.* § 3131(b)(2).

In *F.D. Rich Co., Inc.*, 417 U.S. at 122, the Supreme Court explained that, ordinarily, a

supplier of labor or materials on a private construction project could obtain a mechanic's lien,

but such a lien "cannot attach to Government property."  (Citing *Illinois Surety Co. v. John

Davis Co.,* 244 U.S. 376, 380 (1917)).  Because suppliers on government projects "are deprived

of their usual security interest," the Miller Act "was intended to provide an alternative remedy to

protect the rights of these suppliers." *F.D. Rich Co., Inc.*, 417 U.S. at 122.  And, in *United States

for Benefit & on Behalf of Sherman v. Carter*, 353 U.S. 210, 216-17 (1957), the Supreme Court

explained:

> The Miller Act represents a congressional effort to protect persons supplying
> labor and material for the construction of federal public buildings in lieu of the
> protection they might receive under state statutes with respect to the construction
> of nonfederal buildings. The essence of its policy is to provide a surety who, by
> force of the Act, must make good the obligations of a defaulting contractor to his
> suppliers of labor and material. Thus the Act provides a broad but not unlimited
> protection.[]

To achieve these purposes, the Miller Act authorizes any "person that has furnished labor or material in carrying out work" under a Miller Act contract and who "has not been paid in full within 90 days after the day on which the person did or performed the last of the labor furnished or supplied the material" to bring "a civil action on the payment bond." 40 U.S.C. § 3133(b)(1). Such a civil action must be filed "in the name of the United States for the use of the person bringing the action." *Id.* § 3133(b)(3)(A). An action brought under 40 U.S.C. § 3133(b) "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." *Id.* § 3133(b)(4).

## B. Aarow's Motion to Dismiss

Count I of Grunley's Amended Counterclaim alleges that Aarow breached the Subcontract by bringing this civil action against the Sureties. ECF 46, ¶¶ 17-22. In particular, Grunley alleges, *id.* ¶ 19: "Under the Subcontract, Aarow agreed that Grunley is not independently liable for any alleged damages for delay and that Aarow's sole remedy for such damages are to any funds recovered from the Government through the provisions of the Prime Contract."

In support of Grunley's claim that Aarow breached this part of the Subcontract by seeking recovery from the Sureties for its delay damages (ECF 46, ¶ 20), it quotes from the Subcontract, which provides, in relevant part, ECF 1-2, ¶ 12:

> The Contractor shall not be independently liable to Subcontractor for any unforeseeable delay or interference occurring beyond the Contractor's control or for delay or interference caused by Owner or other subcontractors or suppliers. Subcontractor shall only be entitled to reimbursement for any damages for delays recovered on its behalf by the Contractor from the Owner or others. The Subcontractor shall have the right, at its expense, to exercise all provisions of the Prime Contract to recover said damages against the Owner. In the event that the Contractor seeks to recover damage for delay against the Owner or others and the Subcontractor participates in such claim, the Subcontractor shall be responsible for its pro rata share of any legal, expert, or other expenses in presenting and/or

prosecuting the overall claims. The Contractor shall have the right, at any time and for any reason, to delay or suspend the whole or any part of the Work herein. A time extension shall be the sole and exclusive remedy of the Subcontractor for delays or suspensions caused by Contractor, even if the delays or suspensions were (1) of a kind not contemplated by the parties, (2) amounted to an abandonment of the contract, or (3) were caused by active interference of Contractor or other subcontractors or suppliers.

Aarow moves to dismiss Grunley's claim on the ground that this clause (the "no-damages-for-delay" clause) is unenforceable under the Miller Act. ECF 55 at 4. Aarow refers to the Court's prior Memorandum Opinion (ECF 36), in which I concluded that Aarow's suit against the sureties should not be stayed pending the resolution of Grunley's claim against the United States. *See* ECF 36 at 23. According to Aarow, because the no-damages-for-delay clause is void as a matter of law, Grunley's breach of contract claim must also fail. ECF 55 at 6. Grunley responds that regardless of the enforceability of the clause, Grunley has stated a cognizable claim. ECF 56 at 7. And, it contends that the clause may still be in some sense enforceable. *Id.* at 6.

Under Virginia law, "[i]n an action for breach of contract, a plaintiff must demonstrate (i) an enforceable contract, (ii) a material violation or breach of that contract, and (iii) a consequential injury or damage to the plaintiff." *Elite Entm't, Inc. v. Khela Bros. Entm't Inc.*, 396 F. Supp. 2d 680, 692 (E.D. Va. 2005) (citing *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 546, 379 S.E.2d 316 (1989)).

As to the first element, the enforceability of this provision of Grunley's contract is very much in question. *See infra; see also, e.g.*, *United States v. Safeco Ins. Co. of Am.*, No. 5:13-CV-00009-TBR, 2013 WL 5970435, at *3 (W.D. Ky. Nov. 8, 2013) ("First, the no-damage-for-delay clause in paragraph 8.4 is void under the Miller Act.").

More significantly, however, Grunley has alleged no facts to suggest that Aarow breached the Subcontract. As noted, the Subcontract states that Aarow "shall only be entitled to reimbursement for any damages for delays recovered on its behalf by the Contractor from the Owner or others." *See* ECF 46, ¶ 9. Even assuming this provision is enforceable, on its face it does not prohibit Aarow's suit against the Sureties. At most, the provision might be raised by Grunley (or the Sureties) as a defense to the suit. But, Grunley has identified no language in the Subcontract that forbids Aarow from filing a lawsuit.

Therefore, I conclude that Grunley's breach of contract claim against Aarow, as currently pleaded, is subject to dismissal.

### C. Defendants' Motion for Partial Summary Judgment

Defendants move for summary judgment on three separate issues. ECF 61. First, they seek to enforce the pay-if-paid clause of the Subcontract to limit Aarow's recovery from the Sureties to the amount recovered by Grunley from the United States on Aarow's behalf. ECF 61-1 at 9-13. Second, they assert that Aarow waived and released its right to recover for any damages incurred after the Project reached substantial completion. *Id.* at 14-15. Third, defendants contend that, pursuant to the Miller Act, Aarow cannot recover any damages attributable to equipment owned by Aarow itself. *Id.* at 16.

### 1. Pay-When-Paid

Defendants' first argument fails because, as discussed in the Court's prior Memorandum Opinion, the pay-if-paid clause of the Subcontract is unenforceable against Aarow's Miller Act claims. *See* ECF 36 at 23-26; *see also United States on behalf of Kitchens To Go v. John C. Grimberg Co.*, 283 F. Supp. 3d 476, 483 (E.D. Va. 2017) ("The very purpose of a surety bond under the Miller Act, and indeed, generally, is to ensure that claimants who perform work are

paid for the work in the event and even if the principal does not pay."); *Tusco*, 235 F. Supp. 3d at 756 ("When a surety attempts to enforce its principal's (the prime contractor's) conditional payment clause, federal courts that have addressed the issue have unanimously held that a surety is *not* entitled to the benefits of its principal's pay-when-paid or pay-if-paid clause.") (emphasis in *Tusco*); *Safeco*, 2013 WL 5970435, at *3. I incorporate here my earlier discussion of the validity of pay-if-paid and no-damages-for-delay clauses under the Miller Act. ECF 36 at 23-26.

However, defendants insist that "the present issue is different," and that these conditional payment clauses are enforceable in the current context because they seek to affect only the measure of—rather than the right to—recovery. ECF 61-1 at 11-12. In support, defendants cite cases indicating that the provisions of a subcontract control on the question of what form of damages a Miller Act plaintiff may recover. *Id.* at 10-11. For example, in *United States ex rel. Woodington Electric Co. v. United Pacific Insurance,* 545 F.2d 1381 (4th Cir. 1976), the Fourth Circuit ruled that a subcontractor's compensation could be measured by a share of profits rather than the cost of materials or a fixed price. *Id.* at 1383-84. In particular, the Court noted, *id.* at 1383 (citation omitted): "[T]he surety is obligated to pay the compensation to which the parties have agreed, although this amount exceeds the cost of labor, materials, and overhead." And, defendants cite *Taylor Const. Inc. v. ABT Serv. Corp.*, 163 F.3d 1119, 1121-23 (9th Cir. 1998), in which the Ninth Circuit concluded that a subcontractor was entitled to recover project savings, in addition to labor and materials, because the subcontract provided for such an arrangement.

These cases do not support defendants' position. The Subcontract appears to be a fixed-price contract, with a section providing that if Aarow is required to perform "extra work" it "shall be paid for the actual direct costs of said work plus ten percent." *See* ECF 1-2 at 1, 8. There is no question of "measure of recovery" in the sense of profits as an alternative to costs.

Rather, defendants seek a backdoor method of enforcing an unenforceable provision against Aarow.

Under defendants' argument, if Aarow had incurred one million dollars in materials and labor costs as a result of the delay, but Grunley recovered only one dollar from the United States, Aarow's rights under the Miller Act would not be thwarted by a $999,999.00 underpayment. This is an absurd interpretation of what has been universally acknowledged to be a remedial statute entitled to liberal construction. *See U.S. for Benefit & on Behalf of Sherman v. Carter*, 353 U.S. 210, 216 (1957). The Court shall not adopt such an interpretation.

### 2. Post-Substantial Completion Costs

Defendants seek a ruling that Aarow cannot recover any of the $76,572 it requests for delays that occurred after substantial completion of the Project was achieved on March 9, 2015. ECF 61-1 at 14-15. In particular, defendants maintain that such claims were waived when Aarow signed partial releases at the end of April 2015 and December 2015. *Id.* at 14. The partial releases provided that Aarow "forever waives and release[s] any and all causes of action . . . against [the United States, Grunley, or the Sureties] by reason of labor and/or materials and/or equipment furnished to the Project as of the date noted . . . ." *See* ECF 61-7 at 1 ("April 2015 Release"); *id.* at 2 ("December 2015 Release"). The partial releases "carve out" claims submitted to and authorized by Grunley, but defendants assert that Aarow did not submit any claims between March 9, 2015, and the signing of the April 2015 Release. ECF 61-1 at 14.

As noted in the Court's prior Memorandum Opinion (ECF 36), a waiver of rights under the Miller Act must be "clear and explicit." *See* ECF 36 at 25 (quoting *Walton Tech., Inc.*, 290 F.3d at 1205); *see also Tusco*, 235 F. Supp. 3d at 757. Moreover, Congress amended the Miller Act in 1999 in the Construction Industry Payment Protection Act of 1999, adding a new

subsection entitled "NONWAIVER OF RIGHTS." Pub. L. No. 106-49, § 2(b), (c), 113 Stat. 231. The statute provides, 40 U.S.C. § 3133(c):

> (c) A waiver of the right to bring a civil action on a payment bond required under this subchapter is void unless the waiver is—
>
> (1) in writing;
>
> (2) signed by the person whose right is waived; and
>
> (3) executed after the person whose right is waived has furnished labor or material for use in the performance of the contract.

"Section 3133(c)(3) specifically provides that a subcontractor can waive its Miller Act rights only *after* it has furnished labor or material for use in the performance of the contract." *Zurich Am. Ins. Co.*, 99 F. Supp. 3d at 549 (emphasis in original). "The purpose of Section 3133(c)(3) was to prevent prime contractors from requiring that subcontractors waive their Miller Act rights as a precondition to obtaining work on federal projects." *Id.* And, "the requirement that any waiver be executed after completion of the subcontractor's work would be meaningless if general contractors could simply craft subcontract provisions that effectively preclude Miller Act suits." *United States ex rel. Glass, Inc. v. Patterson,* No. 12-2634, 2014 WL 442853, at * 3 (E.D. Pa. Feb. 4, 2014).

Aarow contends that the partial releases are inapplicable for two reasons: (1) Aarow did not intend to waive its rights under the Miller Act (ECF 65 at 11-12); and (2) the partial releases are unenforceable as contracts because they lack mutual assent and consideration. *Id.* at 13-15. Additionally, Aarow maintains that even if the partial releases are enforceable, they only cover the period from substantial completion in March 2015 through the end of December 2015. *Id.* at 15-16. But, Aarow asserts that it incurred delay damages after December 2015, which the partial releases would not bar. *Id.*

In support of its first argument, Aarow claims that it never intended to waive its right to post-substantial completion compensation, and that its representatives had discussed the compensation with Grunley's personnel. *Id.* at 11-12. Aarow has submitted the Affidavit of Christopher Scott Gagnon (ECF 65-2), which avers facts to that effect. *Id.* ¶¶ 3.M-3.O. Aarow's argument that the partial releases lack mutual assent relies on the same basis. *See* ECF 65 at 13-14.

These *ex post facto* protestations are unavailing. Under Virginia law, "[i]f the words or other acts of one of the parties have but one reasonable meaning, his undisclosed intention is immaterial except when an unreasonable meaning which he attaches to his manifestations is known to the other party." *Lucy v. Zehmer*, 196 Va. 493, 503, 84 S.E.2d 516, 522 (1954) (citation omitted); *see also Wells v. Weston*, 229 Va. 72, 78, 326 S.E.2d 672, 676 (1985) ("In evaluating a party's intent, however, we must examine his outward expression rather than his secret, unexpressed intention.") (citation omitted); *CB Richard Ellis of Virginia, Inc. v. Rainier Realty Acquisitions, LP*, No. 3:15-CV-298-JAG, 2016 WL 8229030, at *2 (E.D. Va. Jan. 13, 2016). The partial releases are unambiguous in their statement that Aarow "forever waives and release[s] any and all causes of action . . . by reason of labor and/or materials and/or equipment furnished to the Project as of the date noted . . . ." ECF 61-7 at 1, 2. Aarow does not assert otherwise. *See* ECF 65 at 13-14. On the basis of mutual assent, the partial releases are enforceable. *See United States for the use and benefit of Chasney and Company v. Hartford Accident & Indem. Co.*, 168 F. Supp. 3d 824, 835 (D. Md. 2016).

Next, Aarow invokes the seminal contract principle that "the payment of a sum which the payee was under a previous legal or statutory obligation to pay is not sufficient consideration to support a contract." ECF 65 at 14 (citations omitted). Aarow claims that Grunley "had a pre-

existing duty under the Subcontract to pay Aarow for the labor and materials rendered to the Project, and the payment to Aarow for the labor and materials already rendered to the project is insufficient consideration to support the partial releases." ECF 65 at 15.

Under the express terms of the Subcontract, this argument fails. Judge Bredar's opinion in *Chasney*, 168 F. Supp. 3d at 835, is informative. He wrote, *id.*: "Were the Court to construe the Partial Releases in isolation as independent, freestanding contracts, [the plaintiff's] argument might have traction. But because the Partial Releases are expressly authorized by the Subcontract, the more reasonable approach is to view them as supported by the same consideration that supports the Subcontract . . . ."

The same logic applies here, as the Subcontract provides for such partial releases. It states, under the provision regarding Grunley's payments to Aarow, ECF 1-2, ¶ 6: "Partial releases may be required at the Contractor's option as a condition precedent to any partial payments for work completed and the Contractor may require the Subcontractor to certify and/or exhibit such other evidence that all entities furnishing labor, materials, and equipment under prior requisitions have been paid in full." Such provisions have been consistently enforced. *See Chasney*, 168 F. Supp. 3d at 835-36 (collecting cases).

Aarow offers no reason why the provision should not apply here. As a result, I conclude that the partial releases are enforceable.

However, Aarow is correct to point out that the partial releases do not cover Aarow's claims for post-substantial completion payments after December 31, 2015, as the December 2015 Release only runs through that date. *See* ECF 65 at 16; ECF 61-7 at 2. In their Reply, defendants appear to argue that Aarow's claims for payments after December 31, 2015, accrued as early as December 18, 2014. *See* ECF 67 at 13. The factual basis for this contention is

unclear.  The parties have not fully elaborated their estimated damages, and I make no specific findings as to the allowable amount.  But, to the extent that Aarow asserts a claim for damages accruing after December 31, 2015, those claims are not waived by the partial releases.

### 3.  Company-Owned Equipment

Aarow appears to request more than $45,000 in expenses related to company-owned equipment.  *See* ECF 61-9 at 22-26.  Defendants' remaining contention is that, under the Miller Act, Aarow cannot recover any compensation for the use by Aarow of its own equipment.  ECF 61-1 at 16.

Aarow maintains that "equipment rental costs are recoverable under the Miller Act as a matter of law."  ECF 65 at 17.  It contends that "the distinction between equipment rented from a third party and company owned equipment does not go to the recoverability of rental costs because there is fundamentally no difference between company owned equipment and non-company owned equipment in this regard."  *Id.*  Aarow cites no authority for this proposition.

In my view, Aarow is mistaken.  "A thing which may reasonably be expected to be removed by the contractor and used in subsequent jobs is a part of the contractor's capital equipment," and "[a] Miller Act payment bond does not protect the vendor of capital equipment."  *United States for the Use of Sunbelt Pipe Corp. v. U.S. Fid. & Guar. Co.*, 785 F.2d 468, 470 (4th Cir. 1986).

A surety's liability under the Miller Act is limited to the subcontractor's "'out-of-pocket costs of delay.'"  *U.S. for Use & Benefit of T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Texas*, 942 F.2d 946, 952 (5th Cir. 1991) (quoting *U.S., for Use & Benefit of Pertun Const. Co. v. Harvesters Grp., Inc.*, 918 F.2d 915, 919 (11th Cir. 1990)).  Because Aarow owned the equipment at issue, it incurred no out-of-pocket costs.  "The use value of [a subcontractor's]

own equipment . . . is far more analogous to lost profits—for which recovery against the surety is not allowed—than to actual expenditures for labor or materials utilized in the performance of the subcontract—for which it is." *Pertun*, 918 F.2d at 919.

As a result, Aarow is not entitled to recover from the Sureties for any costs of delay associated with its own capital equipment.

### D.  Aarow's Motion for Summary Judgment

Aarow moves for summary judgment on its Miller Act claim, asserting that it has demonstrated its entitlement to payment under the statute and that defendants have failed to rebut any of its evidence as to damages.  ECF 60-1.  Additionally, Aarow seeks summary judgment as to Count II of Grunley's Amended Counterclaim, in which Grunley seeks to recover from Aarow any amount it is obliged to pay to the United States.  According to Aarow, because Grunley and the United States have reached a settlement, "Grunley has no exposure to the Government for the damages referenced in Count II," and Aarow is entitled to summary judgment on the claim.  *Id.* at 9-10.

### 1.  Defendants' Liability Under the Miller Act

Defendants dispute the amount of damages to which Aarow is entitled, but do not appear to dispute their liability under the Miller Act.  *See* ECF 64.  Curiously, defendants failed to address much of Aarow's Motion on the merits, instead relying repeatedly on the assertion that "Aarow has the burden of proving its claims."  *Id.* at 6.  However, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat*, 346 F.3d at 522 (citation omitted).  That Aarow bears the burden of proof does not absolve defendants of their obligation to identify the facts in dispute.

As a result of my conclusions with respect to Defendants' Motion, which limit Aarow's claims by some amount, I shall decline to tabulate the parties' damages at this time. It is evident that Aarow has suffered at least some damages on account of the delays on the Project. *See* ECF 60-5 at 4-11 (Expert Disclosure of Paul B. Krogh). And, given that the Sureties may not enforce the pay-when-paid or no-damages-for-delay clauses against Aarow, it appears that some of those damages are still outstanding.

### 2. Aarow's Liability to Grunley

Aarow seeks to extinguish Grunley's counterclaim for damages against Aarow on the ground that Grunley will not incur any damages from the Government, and so it will have no damages to pass along to Aarow. ECF 60-1 at 9-10. It is undisputed that Grunley and the United States have settled their payment dispute, and that the Government paid Grunley, rather than the other way around. *See* ECF 60-4 ("Settlement Agreement and Release"). Without citing any authority, Aarow asserts that it is therefore entitled to summary judgment in its favor on this claim. ECF 60-1 at 10.

Defendants, who also eschew the mention of any legal authority, contend that Grunley settled with the Government for a smaller amount than it otherwise would have, because the Government asserted claims against Grunley. ECF 64 at 8. Therefore, defendants maintain that they have "the right to put on [their] case" to recover the difference between what Grunley recovered from the Government and what Grunley *would have* recovered from the Government, absent Aarow's alleged overcharging. *Id.*

Although neither side states a compelling case, I decline to grant Aarow summary judgment on this question. Defendants have submitted the Declaration of B.F. Scott, II (ECF 64-1), who is Senior Vice President at Grunley. *Id.* ¶ 2. He declares, *id.* ¶ 7: "As a result of . . . the

Government Claim, Grunley agreed to resolve the matter for an additional payment from the Government of only $105,000. Grunley accepted less than we would have otherwise had the Government not discredited Aarow's claim . . . and not asserted the Government Claim."

Grunley has averred that Aarow's actions harmed Grunley by forcing it to accept a smaller settlement than it would otherwise have been entitled to recover. Aarow has offered no reason why Grunley should not be entitled to pursue recovery of this alleged deficit from Aarow. In this respect, the Aarow Motion shall be denied.

## IV.    Conclusion

For the reasons stated above, I shall GRANT the Motion to Dismiss Count I of Grunley's Amended Counterclaim. I shall GRANT in part and DENY in part the Aarow Motion and Defendants' Motion. Aarow has waived its claims to compensation from the date of substantial completion through December 31, 2015, and it may not recover damages related to equipment it owned at the time. Grunley may continue to pursue damages against Aarow related to its settlement with the Government. And, defendants are liable to Aarow under the Miller Act for any allowable labor and materials expenses due and owing, with exact damages to be determined at a later point.

An Order follows, consistent with this Memorandum Opinion.


Date:  August 23, 2018                                        _____/s/_____
                                                              Ellen Lipton Hollander
                                                              United States District Judge